[Doc. No. 102]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

CAROL FREDERICKS and KENNETH
SCHLOESSER,

        Plaintiffs,

   v.

ATLANTIC CITY BOARD OF
EDUCATION, et al.,

        Defendants.

Civil No. 08-3082 (RBK/JS)

---

**O P I N I O N**

    This Opinion addresses the motion of defendants The Atlantic City Board of Education and Frederick P. Nickles to disqualify John M. Donnelly and his law firm Levine, Staller, Sklar, Chan, Brown & Donnelly, P.A., from representing plaintiffs.[1]  For the reasons to be discussed the Board's motion is DENIED.[2]

Background

    Plaintiff filed her complaint on June 20, 2008 against the Atlantic City Board of Education ("ACBOE"), its Superintendent of Schools, Fred Nickles, and its Assistant Superintendent for Human Resources, Thomas Kirschling.  Plaintiff claims that her employment

---

    [1]The moving parties will be collectively referred to as the "Board."  Mr. Donnelly and his law firm will be collectively referred to as "Donnelly." "Plaintiff" refers to Carol Fredericks.

    [2]Kirschling was voluntarily dismissed from the case on February 16, 2010.  On March 2, 2010, plaintiff filed her amended complaint adding her husband as a plaintiff to pursue his loss of consortium claim.

contract as the Atlantic City School District's Assistant Business
Administrator was wrongfully not renewed. Plaintiff was employed by
the ACBOE from September 2003 to June 30, 2007. Plaintiff's
complaint alleges her contract was not renewed because, <u>inter</u> <u>alia</u>,
she complained about the Board's unlawful fiscal practices and
false claims. Plaintiff allegedly complained about the Board's cell
phone usage, parent program, and the school lunch program.
Plaintiff also alleges she complained about Nickles' inappropriate
fund-raising activity for Board members. <u>See</u> Complaint at ¶¶112-
117.  In addition, plaintiff alleges she was retaliated against
because she testified at the bribery trial of former Board
President Cornell Davies, who was an "ally" of Nickles and
Kirschling. <u>See</u> Complaint at ¶¶118-135. Plaintiff also alleges
defendants retaliated against her because of her association with
Nickles' "political adversary." <u>Id</u>. at ¶¶127-133.

    From the outset of the case plaintiff has been represented by
Donnelly.  Effective February 1, 2010, the Levine, Staller law firm
merged with Kelley and Callahan, P.C.  The Board argues that Glenn
P. Callahan, Esquire, a principal in Keeley & Callahan, represented
the Board before its merger.  The Board argues that Callahan
provided "legal services and advice" to the Board in connection
with the Board's "E-Rate investigation."

    Earlier in the case the Court addressed a privilege issue
involving Callahan that is germane to the present motion. On
February 7, 2006, the Board passed a resolution authorizing the

retention of an "independent professional" to investigate the terms
and conditions of the Year Six E-Rate proposals submitted to the
federal government for the elementary schools of the City of
Atlantic City.  The Board selected Callahan to do the
investigation.  As noted in Callahan's written report, he "was
engaged to investigate and report to the Board with respect to
problems and issues which related to the Board's participation in
the Year Six E-Rate program." Report at 1. Callahan noted that the
issues he addressed fell into two major categories.  One category
related to the circumstances surrounding the planning and execution
of the Year Six E-Rate bid process. The second category related to
the termination of Jonathan Jones, the former Data Center Manager
for the district and his subsequent successful lawsuit against the
Board and certain individuals.  Without relaying all of the
conclusions in Callahan's report, suffice it to say that the report
was critical of the Board. Callahan discussed how the bidding and
ultimate awarding of the Year Six E-Rate contract was flawed.  He
also discussed Jonathan Jones and the fact that some of the
accusations against him were unfounded.  Callahan also discussed
the deterioration of the personal and professional relationship
between Nickles and Jones and how that contributed to problems with
the E-Rate program.

On October 1, 2009, the Court held oral argument on the
Board's Motion for Protective Order.  The Board argued, inter alia,
that Callahan's report did not have to be produced to plaintiffs

because it was protected by the attorney-client privilege and work-product doctrine. See Transcript of Oral Argument ("Tr.") at 2-17, Doc. No. 52. In its oral opinion the Court denied the Board's motion and directed the Board to produce Callahan's report. Id. On October 2, 2009, the Court issued a formal Order denying the Board's motion.

The Board argues Donnelly should be disqualified pursuant to New Jersey's Rules of Professional Conduct ("R.P.C.") 1.9 and 1.10. According to the Board, Donnelly should be disqualified because:

> R.P.C. 1.9 dictates that an attorney cannot switch sides to represent a party adverse to a former client for whom the attorney previously performed work without an express waiver, and absent waiver, an attorney attempting to do so must be disqualified. Rule 1.9 further states that a public entity is unable to consent to waiving such conflict.

Board's Memorandum ("Memo") of Law at 9. The Board argues the Levine, Staller law firm should be disqualified because:

> Rule 1.10 ... provides that any attorney disqualification is imputed to any law firm with which the attorney is associated, the disqualification of the law firm being mandatory where screening cannot cure the disqualification of the attorney due to that attorney having acquired confidential materials relating to the case.

Id.

The Board contends that plaintiffs' lawyers should be disqualified to prevent them from taking "unfair advantage [of the Board] through the use of confidential information gained in relationship with a client's adversary." Memo. of Law at 14-15. In addition, the Board argues that the "time and effort expended by

4

counsel and current client does not outweigh the extreme prejudice created by potential use of confidential attorney-client information." Id. at 15.

Not unexpectedly Donnelly vigorously opposes the Board's motion. Donnelly contends that before its merger with Callahan's law firm it analyzed the potential application of R.P.C. 1.9 and R.P.C. 1.10 and concluded "that these Rules did not support a disqualification of the Firm in this matter if the Merger (sic) went through and Callahan became a member of the Firm." Plaintiffs' Brief at 7. The gravamen of Donnelly's opposition is that disqualification is not appropriate because Callahan never had an attorney-client relationship with the Board. Plaintiffs contend that "Callahan's engagement was for non-legal work" (id. at 11), and he "was not acting as an attorney in connection with the investigation and preparation of [his] report." Id. at 12.[3]

Discussion

In the District of New Jersey issues regarding professional ethics are governed by L. Civ. R. 103.1(a), which provides that the Rules of Professional Conduct of the American Bar Association as

---

[3]In opposition to the Board's motion plaintiffs also argue there is no substantial relationship between Callahan's Report and the current matter. Id. at 13. Plaintiffs also argue, "no facts relevant to the Report are both relevant and material to this litigation." Id. at 17. As will be discussed, since the Court is denying the Board's motion because Callahan never represented the Board in his capacity as an attorney, there is no need to address plaintiffs' alternative arguments for why the Board's motion should be denied.

revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in the District.  See L. Civ. R. 103.1(a); Carlyle Towers Condo Ass'n, Inc. v. Crossland Sav., FSB, 944 F.Supp. 341, 344-45 (D.N.J. 1996).  When deciding a motion to disqualify counsel the movant bears the burden of proof that disqualification is appropriate.  City of Atlantic City v. Trupos, 201 N.J. 447, 462-63 (2010); Maldonado v. New Jersey, ex rel., 225 F.R.D. 120, 136-37 (D.N.J. 2004).  The movant's burden is a heavy one since "[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" Alexander v. Primerica Holdings, Inc., 822 F.Supp. 1099, 1114 (D.N.J. 1993)(quoting Schiessle v. Stephens, 117 F.2d 417, 420 (7th Cir. 1983)(internal quotation marks and citation omitted)).  When determining whether to disqualify counsel the court must closely and carefully scrutinize the facts of each case to prevent unjust results. Montgomery Academy v. Kohn, 50 F.Supp. 2d 344, 349 (D.N.J. 1999).  In Steel v. General Motors Corp., 912 F.Supp. 724, 733 (D.N.J. 1995)(citation omitted), the court noted, "[r]esolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'" Further, "[t]his balancing involves a 'painstaking analysis of the facts and precise application of precedent'." Id.

The Board seeks to disqualify Donnelly pursuant to R.P.C. 1.9,

6

which reads:

> RPC 1.9 Duties to Former Clients
>
> (a) A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client,
>
> > (1) whose interests are materially adverse to that person; and
>
> > (2) about whom the lawyer, while at the former firm, had personally acquired information protected by RPC 1.6 and RPC 1.9(c) that is material to the matter unless the RPC former client gives informed consent, confirmed in writing.

Three elements must be demonstrated to disqualify an attorney pursuant to R.P.C. 1.9: (1) the existence of a past attorney-client relationship involving the attorney sought to be disqualified; (2) that the current representation involves the same or a matter substantially related to the former representation; and (3) that the interests of the attorney's current client are materially adverse to the interests of the former client. Home Care Indus., Inc. v. Murray, 154 F. Supp. 22 861, 866 (D.N.J. 2001)(citation omitted); FMC Corporation v. Guthery, C.A. 07-5409(JAP), 2009 U.S. Dist. LEXIS 14609, at *12 (D.N.J. Feb. 25, 2009).

As noted, the first element the Board must prove to disqualify Donnelly pursuant to R.P.C. 1.9 is that a past attorney-client

relationship existed between the Board and Callahan. Unfortunately for the Board, however, it only proffers summary conclusions, rather than supporting facts, to support its argument that it had a past attorney-client relationship with Callahan.[4]   After close analysis, and for the reasons to be discussed, the Court finds that no attorney-client relationship existed between the Board and Callahan.  Therefore, the Board's motion must be denied.[5]

When the Court previously decided whether to uphold the Board's attorney-client privilege claim as to Callahan's report it analyzed the same facts the Board is now presenting in support of its motion to disqualify.  When it decided that Callahan's report should be produced, the Court found that Callahan was merely hired as an investigator for the Board, not to act as its attorney and

---

[4]The Board's Brief is replete with conclusory statements to this effect. The Board writes: "Defendant Board of Education paid the law firm of Keeley & Callahan $18,421.02 as invoiced for legal services and advice rendered in its representation of the Board of Education ...."  Brief at 5; "Defendant Board of Education does not consent ... to the continued representation of Plaintiffs by Levine Staller of which Defendant's prior counsel Attorney Callahan is now a partner and also a witness listed for trial against the Board of Education."  Brief at 8; "Clearly, in his former position as counsel for Defendant Board of Education, Attorney Callahan received confidential information ...."  Brief at 11; "... plaintiffs have recently identified Glenn Callahan as a trial witness ....  The only information that Mr. Callahan could possibly provide Plaintiffs' case would be E-Rate information ..., which he gathered and received during his time as the Board of Education's attorney."  Brief at 12; "... Attorney Callahan ... previously represented Defendant Board of Education in matters substantially related to the present case." Brief at 17.

[5]If Donnelly is not disqualified under R.P.C. 1.9 then a fortiori his law firm is not disqualified pursuant to R.P.C. 1.10.

not to provide legal advice.  The Court stated in its oral opinion:

> The Court concludes that Callahan's report is not
> protected by the attorney-client privilege. The bottom
> line to the Court's ruling is that Callahan was not
> engaged to render any legal advice or opinions and his
> report does not contain any legal advice or opinions. The
> long and short of it is that Callahan performed a
> background fact investigation.

Tr. 10:21-25 to 11:1.  The Court reasoned:

> The fact that Callahan was not engaged to render any
> legal advice is evidenced by the Board's resolution
> relating to Callahan's hiring.  The Board merely
> authorized the hiring of a "professional". The resolution
> says nothing about an attorney or legal analysis.
> Callahan confirms this in his report when he states he
> was engaged to "investigate and report" to the Board.
> Callahan does not state that he was asked to perform any
> legal analysis. Callahan reiterated this fact when he
> stated that the purpose of his investigation was to
> "provide the Board with an assessment with what went
> wrong with the Year Six E-Rate program."

Tr. 11:8-18. As noted, the Board has not presented any facts in

support of its motion that were not previously submitted and

considered by the Court.  For the same reasons the Court previously

ruled that Callahan was not hired by the Board in his capacity as

an attorney, the Court makes the same finding now.

Moreover, the Court now has before it Callahan's Certification

[Doc. No. 108-2] that was not previously presented.  Callahan's

Certification buttresses the Court's ruling.  He states:

> 6. I was engaged by the Board for a limited purpose: to
> conduct a factual investigation, which could have been
> done by a non-attorney as authorized by the Board's
> Resolution.
>
> 7. At no time was I engaged by the Board to give legal
> advice or to provide a legal opinion in my capacity as an
> attorney, nor did I do so.

9

...

14. In the course of my engagement, I did not discuss or obtain any information related to the Board's litigation strategy, including its litigation strategy in connection with the Relcomm case and the Jones case, both of which cases were concluded at the time of my report.

...

17. I have not represented nor been subsequently engaged by the Atlantic City Board of Education for any purpose, nor have I had any further dealings with them in connection with my report.

See Callahan's Certification at ¶¶6, 7, 14, 17.  The Board has not rebutted Callahan's Certification.

To be sure, Callahan's denial that he represented the Board in his capacity as a lawyer is not dispositive.  This is true because even in the absence of an express agreement an attorney-client relationship may arise by implication.  Matter of Palmieri, 76 N.J. 51, 58-59 (1978)(the attorney-client relationship "need not necessarily be articulated, in writing or speech but may, under certain circumstances, be inferred from the conduct of the parties).  In Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151 (3d Cir. 2001), the Court addressed when an attorney-client relationship exists, and indicated that an attorney-client relationship is created with respect to a particular matter when:

> a person manifests to a lawyer the person's intent that the lawyer provide legal services to the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.

<u>Id</u>. at 169.

The Board cannot demonstrate that any of the foregoing conditions exist. The Board has not presented any evidence that it relied on Callahan to provide "legal services." To the contrary, the Board's paperwork indicates that it merely hired Callahan to do an investigation. This is evidenced by Callahan's report which contains no legal analysis.[6] Nor has any Board presented evidence that Callahan agreed to perform legal services. The Board did not produce an engagement letter documenting this fact and it has not cited to anything in Callahan's report regarding the provision of legal services. The report confirms that Callahan was merely hired to "investigate and report to the Board." Callahan's Certification confirms the nature of his limited engagement. <u>See</u> Certification at ¶¶6, 7. Lastly, the Board has not presented evidence that Callahan knew or should have known that the Board relied upon him for legal services. To prove that it retained Callahan in his legal capacity the Board must demonstrate reliance on an attorney in his professional capacity. <u>Herbert v. Haytaian</u>, 292 N.J. Super. 426,

_____

[6]Callahan had a right to conduct an investigation for the Board independent of an agreement to render legal services. As noted in <u>Reilly v. Ozzard</u>, 33 N.J. 529, 544 (1961), "[n]ot infrequently an attorney is engaged for services beyond his professional franchise. He may lawfully render such services, not because they are part of the practice of law, but rather because an attorney is not restricted to the practice of his profession." <u>See</u> <u>also</u> <u>Ellenstein v. Herman Body Company</u>, 23 N.J. 348, 352 (1957), adopting the lower Court's ruling that if an attorney "is engaged for the rendition of work which inherently is not the practice of law and his knowledge of law may along the line come into play, the engagement is for non-legal work."

436-37 (App. Div. 1996).   The Board's failure to produce an affidavit to support its claim evidences that the Board did not hire Callahan to provide legal services.

At oral argument the Board raised several arguments not discussed in its motion.   In the interest of completeness the Court will address these arguments.   Even in the absence of a supporting affidavit the Board argues the Court should infer that when Callahan did his investigation he told the Board and its employees that he was acting as the Board's attorney.   The Court declines to base its decision on speculation and evidence not in the record.   This is especially true since disqualification motions are viewed with disfavor and should not be imposed unless "absolutely necessary." Alexander, 822 F. Supp. at 1114.   See also City of Atlantic City, 201 N.J. at 469 ("surmise alone cannot support an order of disqualification").   In addition, at oral argument the Board indicated that in lieu of disqualification it would accept an Order barring Callahan form testifying and barring the introduction into evidence of his report.   For the reasons already discussed this request for relief is also denied.

The Board also argues that Callahan acknowledged he was hired as the Board's attorney because he put an "attorney-client" stamp on his report and he billed for "professional services."   The Board's argument is not persuasive because Callahan's stamp is inconsistent with the parties' words and conduct. Further, merely using the language "professional services" does not reflect that

12

Callahan was retained as the Board's counsel.  Callahan's formulaic language is not determinative in view of the parties' unambiguous actions, conduct and documents.   Further, the Board's deposition testimony contradicts its argument that it hired Callahan to provide legal advice.  The Superintendent of Schools for the Atlantic City School District testified that it hired Callahan to do a "fact-finding mission."  See F. Nickles N.T. 118:20-24.

Under New Jersey law the attorney-client relationship is "inherently an aware, consensual relationship, one which is founded upon the lawyer affirmatively accepting a professional responsibility."  Matter of Palmieri, 76 N.J. at 58 (internal quotations omitted).  As noted in Delso v. Trustees for Retirement Plan for Hourly Employees of Merck & Co., Inc., C.A. No. 04-3009 (AET), 2007 WL 766349, at *7 (D.N.J. March 6, 2007), "the attorney-client relationship begins with a non-lawyer's reliance on the professional skills of an attorney, who, in turn, knows of this reliance and accepts responsibility for it."  Further, "[t]he relationship must be a mutually aware, consensual relationship.... The client must demonstrate from an identifiable action or manifestation, reliance on an attorney in his professional [legal] capacity.... To complete the relationship, the attorney must accept professional responsibility for the undertaking".  Id.  For the reasons already discussed, the Board has not demonstrated that  it relied upon Callahan's legal knowledge and expertise when he was retained.  The Board also has not demonstrated that Callahan agreed

to provide legal representation or advice to the Board.[7]

Conclusion

Accordingly, for all the foregoing reasons, the Board's "Motion to Disqualify John M. Donnelly and the Law Firm of Levin, Staller, Sklar, Chan, Brown & Donnelly, P.A., as Counsel for Plaintiffs" is DENIED.  An appropriate Order will be entered.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: August 26, 2010

---

[7]The Board argues it is unfair to permit Donnelly to represent plaintiffs because his partner (Callahan) is privy to "confidential privileged information."  Brief at 2.  This argument fails because the Court already ruled that Callahan's report and investigation is not privileged.  Furthermore, there is nothing confidential in Callahan's report since it has already been produced to Donnelly.  If the trial judge determines the report is relevant it may be used at trial.